**Ben COLLINS, et al., Plaintiffs–Appellants,**

v.

**John NAGLE, et al., Defendants–Appellees.**

**No. 89–5132.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1989.

Decided Dec. 22, 1989.

Ralph D. Gibson, argued, Burnside, Ky., for plaintiffs-appellants.

Beth Angus Baumstark, Randall McDowell, Office of Gen. Counsel, Natural Resources & Environmental Protection Cabinet, Frankfort, Ky., Russell H. Davis, Jr., argued, Baird & Baird, Pikeville, Ky., for defendants-appellees.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

KEITH, Circuit Judge:

Ben Collins ("B. Collins"), Michael Neal Collins ("M. Collins"), and Burl Fultz ("Fultz") (collectively "appellants") appeal from the district court's order granting a motion for summary judgment in favor of John Nagle ("Nagle"), Jack T. Brown ("Brown"), Roger Martin ("Martin") and Charles Riddle ("Riddle") (collectively "mining investigators"). Appellants also appeal the district court's order granting a motion to dismiss for failure to state a claim in favor of Bill Davis Ford, doing business as W.F. Davis Motor Company, Inc. ("Bill Davis Ford"). For the reasons set forth below, we AFFIRM.

I.

On September 29, 1986, Nagle, Brown, Martin and Riddle, Special Investigators with the Kentucky Department for Surface Mining Reclamation and Enforcement, went to the Buck Creek area to investigate suspected mining activity that had been observed three days earlier during a routine aerial surveillance in Letcher County, Kentucky.[1] When the mining investigators discovered a locked gate barring their entrance to the Buck Creek access road located on property owned by B. Collins, they opened the gate with a winch and proceeded in the direction of the sound of heavy equipment in operation. At the scene, the mining investigators observed a man operating a loader and another man standing beside a running bulldozer. When the two men saw the mining investigators, they ran into the woods. The mining investigators proceeded with their inspection of the site. At the completion of the on-site investigation, they returned down the Buck Creek access road. At the gate, they discovered that their exit was blocked by a blue Ford pickup truck.

The mining investigators found M. Collins and Fultz, who had been at Buck Creek Hollow measuring the clearance for a trailer that was hauling refuse on the property, resting near the pickup truck on a mound of dirt. M. Collins and Fultz had arrived at the gate during the period when the mining investigators were on the property and recognized B. Collins' truck in front of the gate. Prior to the arrival of M. Collins and Fultz, B. Collins had arrived to meet them and noticed that the gate on his property was broken. He pushed the gate together and positioned his pickup truck to temporarily secure the gate. B. Collins left on foot to obtain a chain to resecure the gate. His friends, Chester Holland ("Holland") and Calvin Ball, agreed to take him back to the gate.

Martin, Brown and Riddle recognized the blue pickup truck blocking the gate as the same one that M. Collins and Fultz had used, on September 18, 1986, to block a coal access road on the right fork of Buck Creek. Similarly, on July 10, 1986, Fultz's pickup truck had blocked the exit of Riddle and Martin and two other mining investigators that are not parties to this action. On that occasion, the truck was locked and Fultz claimed that his children had lost the keys. After a half hour, Fultz produced the keys and permitted the mining investigators to leave.

Bearing the previous events in mind, the mining investigators identified themselves, told the men that they were investigating suspected illegal mining activity and asked M. Collins and Fultz to move the truck so

1. During this surveillance operation, Brown observed a new disturbance on an unpermitted surface coal mining operation on Buck Creek.

that they could leave. M. Collins and Fultz informed the mining investigators that the truck belonged to B. Collins, M. Collins' father. The doors to the truck were locked and, they explained, they did not have the keys to move it. The mining investigators discussed among themselves the options that they could employ given the fact that M. Collins and Fultz were interfering with the performance of their duties.

John Nagle and Charles Riddle placed M. Collins and Fultz under arrest for unlawful interference with the performance of the mining investigation, a violation of Ky.Rev. Stat.Ann. § 350.990(8).[2] M. Collins and Fultz were asked to produce their driver's licenses or another form of identification. When Fultz refused to produce his license, Riddle and Martin held his arms while Nagle searched him. When Nagle produced Fultz's wallet, Fultz wrested himself from their restraint and grabbed his wallet from Nagle. After Riddle and Martin regained control, Nagle proceeded with the pat down search and removed a small pocket knife from Fultz's pocket.

At about the time when Fultz resisted the search incident to his arrest, B. Collins arrived in a car driven by Holland. B. Collins got out of the car and approached the scene. Brown ordered him to leave, but B. Collins refused. He did not identify himself, however he stated that he had a right to be there. Brown drew his gun and repeated his order to B. Collins who obeyed.

The mining investigators called the Kentucky State Police requesting a trooper to transport M. Collins and Fultz and a wrecker to move the pickup truck that blocked their exit. Trooper Herman Hall responded. After searching M. Collins and Fultz, he put them in the back seat of his cruiser.

Bill Davis Ford was registered with the Kentucky State Police as a provider of towing services and participated in their rotating call system. Bill Davis Ford re-sponded to a call for towing services on Buck Creek. After B. Collins' truck was towed to Bill Davis Ford's car lot, the mining investigators conducted an inventory search on the impounded pickup. They discovered the pickup was registered to Maggie Collins of LaFollette, Tennessee. An employee of Bill Davis Ford removed the drive shaft of the vehicle to prevent it from being stolen.

On October 2, 1986, Riddle informed the Kentucky State Police and Bill Davis Ford that the pickup could be released. Bill Davis Ford reinstalled the drive shaft and attempted, unsuccessfully, to reach B. Collins. During the night of October 2, 1986, the gate of the car lot was cut. The impounded pickup along with the tailgate of a new Ford pickup and a license plate off of a used vehicle were stolen.

## II.

Appellants sued the mining investigators and Bill Davis Ford pursuant to 42 U.S.C. §§ 1983 and 1988 and alleged violations of their fourth and fourteenth amendment rights. Appellants also asserted pendent state claims of false arrest, false imprisonment, assault, battery, malicious prosecution, abuse of process, and conspiracy tort.

On January 3, 1989, the district court granted Bill Davis Ford's motion to dismiss and granted summary judgment in favor of the mining investigators. The federal claims alleged by appellants were dismissed with prejudice, while the pendent state claims were dismissed without prejudice. Appellants filed a timely notice of appeal in this court on February 1, 1989.

On appeal, B. Collins argues that when they seized his Ford pickup, the mining investigators violated his fourth amendment right to be secure against unreasonable seizures of property and his fourteenth amendment right to procedural due process. In addition, B. Collins alleges that the mining investigators' use of exces-

---

**2.** Ky.Rev.Stat.Ann. § 350.990(8) provides, in pertinent part:

Except as permitted by law, any person who shall resist, prevent, impede, or interfere with the secretary or other personnel of the depart-ment in the performance of [their] duties ... shall, upon conviction, be fined not more than five thousand dollars ($5000) or imprisoned for not more than one (1) year, or both.

sive force deprived him of his substantive due process rights in violation of the fourteenth amendment. B. Collins further contends that the mining investigators and Bill Davis Ford conspired willfully, knowingly and with specific intent to deprive him of his fourth and fourteenth amendment rights.

On appeal, M. Collins and Fultz contend that they were denied substantive and procedural due process guarantees, as well as their fourth amendment rights, when the mining investigators arrested them by employing excessive force and without probable cause.

### III.

This case requires us to conduct a de novo review of the district court's grant of summary judgment in favor of the mining investigators, pursuant to Federal Rules of Civil Procedure 56, and its dismissal of the claims against Bill Davis Ford pursuant to Federal Rules of Civil Procedure 12(b)(6). *Cf. Burkart v. Post–Browning, Inc.,* 859 F.2d 1245, 1249 (6th Cir.1988) (de novo review of district court's grant of summary judgment). *See also Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987) (district court's dismissal pursuant to Rule 12(b)(6) subject to de novo review). Disputed facts will be construed in favor of M. Collins, B. Collins and Fultz—the nonmoving parties. *Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 139–40, 94 S.Ct. 1633, 1637, 40 L.Ed.2d 15 (1974); *Dugan,* 818 F.2d at 516.

■ Both the summary judgment motion and the motion to dismiss for failure to state a claim are properly granted when the moving party establishes that there is no genuine issue as to any material fact. Rule 56 mandates the entry of summary judgment against a party who fails to establish the existence of an essential element of that party's case, and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When considering a Rule 12(b)(6) motion, we accept all factual allega-

tions in the complaint as true. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Dismissal pursuant to rule 12(b)(6) is proper when it is established beyond a doubt that the plaintiff cannot prove any set of facts consistent with the allegations that would entitle such plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir.1987); *Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir.1975).

### A.

B. Collins contends that the mining investigators violated his fourth amendment right to be secure against unreasonable seizures. He maintains that instead of impounding his truck, the most reasonable option for the mining investigators was to tow the truck away from the gate, thereby permitting their exit while leaving it on the premises. The district court found the impoundment of B. Collins' truck reasonable under the circumstances. We agree with the district court's finding.

■ The fourth amendment reasonableness standard does not turn on the availability of less intrusive alternatives. *See Illinois v. LaFayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983) ("[T]he real question is not what 'could have been achieved,' but whether the Fourth Amendment *requires* such steps.... The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."); *cf. Colorado v. Bertine,* 479 U.S. 367, 375–76, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987) (exercise of officers' discretion in deciding whether or not to impound a car is permissible so long as discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity).

To determine whether the mining investigators conducted the seizure in violation of the fourth amendment, we must examine

the facts and circumstances surrounding the impoundment of B. Collins' truck. *See Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 789, 17 L.Ed.2d 730 (1967). Such an inquiry does not require a determination of whether there was in fact a need for the mining investigators to impound the truck; instead we are required to determine whether the mining investigators' decision to impound was reasonable under the circumstances. *United States v. Brown*, 787 F.2d 929, 932 (4th Cir.1986), *cert. denied*, 479 U.S. 837, 107 S.Ct. 137, 93 L.Ed.2d 80 (1986) (citing *South Dakota v. Opperman*, 428 U.S. 364, 372–74, 96 S.Ct. 3092, 3099–3100, 49 L.Ed.2d 1000 (1976); *Cabbler v. Superintendent, Va. State Penitentiary*, 528 F.2d 1142, 1145–46 (4th Cir.1975), *cert. denied*, 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976)).

■ The facts and circumstances surrounding the impoundment are numerous. An unidentified pickup truck was blocking the mining investigators' exit from the site where they were investigating a suspected illegal mining operation. M. Collins and Fultz were present when the mining investigators tried to leave and stated that they did not have the keys to the truck. At no other point during the incident did anyone claim to be able to move the truck. Since Martin, Riddle and Brown had seen M. Collins and Fultz in the truck on numerous occasions, it was reasonable to believe that they had custody and control of the pickup. B. Collins appeared on the scene during the arrest. However, he did not identify himself to the mining investigators; and he did not indicate that he had dominion and control over the truck. Before following Brown's order to leave the scene, B. Collins merely claimed that he had a right to be on the premises. It was only after taking the truck into custody that the mining investigators traced the registration and discover-

ed that Maggie Collins, B. Collins' wife, was the true owner of the truck.

Thus, once the mining investigators decided to arrest M. Collins and Fultz, they were faced with the problem of securing the truck. We find that the impoundment was a reasonable, albeit unsuccessful, means to insure against the damage or theft of the abandoned truck, as the mining investigators knew of no other person immediately available to take custody of the vehicle. *Brown*, 787 F.2d at 932. Accordingly, the district court did not err in granting summary judgment in favor of the mining investigators with regard to B. Collins' claim that the seizure of his truck was unreasonable.

### B.

■ M. Collins and Fultz argue that the mining investigators violated their fourth amendment rights to be free from unreasonable searches and seizures. M. Collins alleges that Riddle arrested him without probable cause; and Fultz alleges that Riddle, Martin, and Nagle arrested him without probable cause. M. Collins and Fultz concede that the mining investigators talked among themselves prior to making the arrests, yet M. Collins and Fultz contend that Nagle's lack of knowledge of certain events occurring prior to their arrests, involving M. Collins, Fultz, Martin, Riddle, and Brown, prevents the probable cause standard from being met.[3] The district court held that, based on the collective knowledge of the mining officers, there was probable cause to arrest M. Collins and Fultz. We agree with the district court's holding.

The Supreme Court has articulated the probable cause standard as requiring an inquiry into "whether, at the moment the arrest was made, ... the facts and circumstances within [the officers'] knowledge

---

**3.** In his deposition, Nagle indicated that as chief of the Office of Special Investigations, he was accompanying the codefendants in his role as field supervisor. At the scene, he witnessed coal spillage on the access road and a bulldozer in operation. Later, Nagle witnessed the bulldozer operator, who from his initial observation Nagle believed to be engaged in illegal coal

mining, fleeing the scene. However, Nagle had neither seen the photographs taken during the aerial surveillance, nor learned of the previous occasions when Martin, Riddle and Brown had been blocked from exiting Buck Creek due to Fultz's locked truck. Nagle Deposition, Joint Appendix 359–372.

and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (citations omitted). Probable cause is commonly based upon police observations and reliable hearsay. *See Davis v. Robbs*, 794 F.2d 1129, 1131 (6th Cir.), *cert. denied*, 479 U.S. 992, 107 S.Ct. 592, 93 L.Ed.2d 593 (1986).

Many circuits, including our own, have determined that probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest. *United States v. Calandrella*, 605 F.2d 236, 246 (6th Cir.1979); *United States v. Killebrew*, 594 F.2d 1103, 1105 (6th Cir.), *cert. denied*, 442 U.S. 933, 99 S.Ct. 2867, 61 L.Ed.2d 302 (1979); *United States v. McManus*, 560 F.2d 747, 750–51 (6th Cir.1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798 (1978); *United States v. Woods*, 544 F.2d 242, 259–60 (6th Cir.1976). *Accord United States v. Valez*, 796 F.2d 24, 28 (2nd Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 957, 93 L.Ed.2d 1005 (1987); *United States v. Hawkins*, 595 F.2d 751, 752 n. 2 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979). *See generally Eighteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1987–1988*, 77 Geo.L.J. 489, 530 (1989) ("Probable cause to arrest exists when the facts and circumstances, based on reasonably trustworthy information and within the collective knowledge of the officers, would lead a prudent person to conclude that it is likely that an offense has been or is being committed.").

The facts of *Killebrew* are similar to those in the instant case. *Killebrew* involved a finding of probable cause to make an arrest for possession with intent to distribute heroin based on the various pieces of information compiled from different phases of an investigation. *Killebrew*, 594 F.2d at 1103. The observations of a Detroit Metropolitan Airport police officer, a federal drug enforcement agent in Detroit, and the Los Angeles police surveillance team contributed to the collective knowledge required to establish probable cause. *Id.* at 1104.

The facts and circumstances surrounding the respective arrests of M. Collins and Fultz include: the mining investigators' earlier on-site observation of the suspected illegal mining operation on the day of the arrest; the fact that Brown, Martin and Riddle had seen M. Collins and Fultz driving the same or a similar truck on numerous occasions; the fact that M. Collins and Fultz had previously used this or a similar blue pickup truck to follow defendants; the fact that when followed by M. Collins and Fultz, Martin had interpreted it as menacing; the previous incident when Riddle, Martin and two other mining investigators were blocked by Fultz's locked truck; Brown's aerial observation of the suspected illegal mining on Buck Creek; and the photographs that were taken during that surveillance operation. Since the knowledge of the mining investigators working together on the scene and in communication with each other is mutually imputed, we do not require that every arresting officer possess all of the information that, when amassed, gives rise to probable cause. *See Woods*, 544 F.2d at 260.

The district court properly imputed to the mining investigators the knowledge they gathered collectively while working on various phases of the investigation of the suspected illegal mining. Likewise, we find that the totality of facts and circumstances provided Nagle, Martin, Riddle and Brown with sufficient collective knowledge to establish probable cause to believe that M. Collins and Fultz were unlawfully interfering with the performance of the mining investigators' duties.

### C.

██ M. Collins and Fultz claim that when the mining investigators arrested them, the mining investigators violated their fourth and fourteenth amendment rights by using excessive force. B. Collins claims that his fourth and fourteenth

amendment rights were violated by the use of excessive force to confiscate his truck. The district court employed both fourth and fourteenth amendment analysis to reach its finding that defendants had not used excessive force to effect the arrests or seizure of property. We agree with the district court's finding, however we rely solely on fourth amendment analysis to reach this conclusion.

In *Graham v. Connor*, the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Court reasoned that analysis under the fourth amendment employs an "explicit textual source" that is absent from the "generalized notion" of substantive due process that governs analysis under the fourteenth amendment. *Id.* The Supreme Court's rationale in *Graham v. Connor* supports the application of fourth amendment analysis to B. Collins' claim that Brown utilized excessive force to seize his pickup truck. We interpret the Court's preference for the "explicit textual source" provided by the fourth amendment, over the substantive due process approach to excessive force claims in the context of arrests, to apply also to excessive force claims regarding seizures of property. *Cf. Graham v. Connor*, 109 S.Ct. at 1871. Thus we will analyze the appellants' respective excessive force claims accordingly.

■ In addition to satisfying the probable cause standard, the fourth amendment requires the arrests be conducted in a reasonable manner. *Tennessee v. Garner*, 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1984); *see also McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir.1988); *Dugan v. Brooks*, 818 F.2d at 516. However, some injuries incurred during an arrest do not rise to the level of a constitutional violation. *See Hinojosa v. City of*

*Terrell, Texas*, 834 F.2d 1223, 1231 (5th Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989); *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir.1987) ("[E]very push and shove an officer makes during an arrest [will not] subject the officer to § 1983 liability. The power to arrest necessarily carries with it the power to use some force to make an arrest."). To determine the reasonableness of the mining investigators' actions during the arrests, we are required to balance the extent of the intrusion against the need for it. *Garner*, 471 U.S. at 7–8, 105 S.Ct. at 1699 (citing *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983); *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976)). Thus, the appellants' excessive force claims require us to determine whether the totality of circumstances justified the mining investigators' conduct in effecting the arrests and seizure of B. Collins' truck. *See Garner*, 471 U.S. at 8–9, 105 S.Ct. at 1699–1700.

The nature and the quality of the intrusion on M. Collins' and Fultz's fourth amendment rights do not support a finding that the mining investigators acted unconstitutionally in effecting the arrests. According to M. Collins' allegations, he was assaulted and physically battered by Riddle. M. Collins contends that after he refused to show the mining investigators the identification that they requested, Riddle was verbally abusive and threatening. Riddle then placed his hand on his weapon, implying the threat of deadly force. Riddle finally grabbed M. Collins' left arm and searched him. From these acts, M. Collins suffered bruises to his left arm for which he did not seek medical treatment.

Fultz alleges that he was assaulted and physically battered by Martin, Riddle and Nagle. After he refused to provide the mining investigators with the identification that they requested, he contends that Martin and Riddle held his arms while Nagle took his wallet out of his pocket. Fultz grabbed the wallet back. As a result of

these actions, Fultz sustained a bruised back and arm.

B. Collins alleges that when he appoached the scene, Brown pointed a gun at him and requested that he leave. As a result of Brown's actions, B. Collins claims to have suffered mental distress and damage to his reputation. The appellants' excessive force allegations do not rise to the level of a constitutional violation.

In *Hinojosa*, the Fifth Circuit distinguished between a show of force by pointing a gun and the actual use of force. 834 F.2d at 1231. *Hinojosa* involved a police officer who pulled out his revolver in the course of his official duties. Like the facts in the case at bar, the officer who pointed the gun was in the process of arresting another individual. In both cases, there was no indication that the officer pointing the gun intended or attempted to fire the gun or to cause physical injury. We agree with the Fifth Circuit's rationale for drawing the distinction between showing force and actually using force:

> By giving [an officer] the ability to pull out and point a service revolver at someone without risking tort liability, he may be able to abort a potentially violent situation. Conversely, to subject such displays of force to second guessing by a jury may increase the likelihood that the officer will wait until the situation escalates further before drawing his gun, and thereby end up having to (or believing he has to) shoot to protect himself or others.

*Id.*

Assuming the level of force alleged by M. Collins and Fultz to be true, this force is not excessive in the context of an arrest. In fact, such an intrusion was warranted by M. Collins' and Fultz's refusal to comply with official requests to provide identification. We find that the district court correctly concluded, as a matter of law, that the mining investigators did not use excessive force in violation of M. Collins' and Fultz's rights guaranteed under the fourth amendment.

B. Collins approached the scene just as M. Collins and Fultz were resisting arrest.

We find that Brown's show of force was not excessive given the uncertainty of B. Collins' intentions and the escalation of activity involving the arrests. The district court properly held that the mining investigators did not use excessive force to seize B. Collins' property.

### D.

■ Pursuant to § 1983, M. Collins and Fultz allege that their arrests by the mining investigators violated their fourteenth amendment due process rights. B. Collins alleges that the mining investigators' seizure and subsequent conspiracy with Bill Davis Ford to deprive him of his pickup truck constitute a fourteenth amendment due process violation. The district court held that because there are adequate post-deprivation remedies available to the appellants, their fourteenth amendment due process rights were not violated. We agree with the district court's holding.

The Supreme Court held in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that where there are adequate post-deprivation remedies available in cases involving deprivation of property, the due process clause of the fourteenth amendment has not been violated. *Id.* at 543, 101 S.Ct. at 1917; *see also Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir.1983), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). We extended *Parratt's* applicability to due process claims for deprivation of liberty interests in *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (en banc). In *Davis v. Robbs*, 794 F.2d 1129 (6th Cir.1986), we articulated the essential elements of a § 1983 claim:

> A § 1983 plaintiff may prevail on his procedural due process claim (1) by demonstrating he is deprived of his liberty as a result of established state procedure which was itself violative of his right to procedural due process; or (2) by proving that the defendants deprived him of a liberty interest pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate him for the loss that he suffered.

*Id.* at 1131. Thus, all of the appellants are required to show that adequate remedies do not exist under Kentucky law.

Like the unsuccessful plaintiff in *Davis*, M. Collins, Fultz and B. Collins not only failed to plead the inadequacy of state remedies, but their pendent claims of false arrest, false imprisonment, assault, battery malicious prosecution, abuse of process and conspiracy tort indicate that there are indeed adequate post-deprivation remedies under Kentucky law. Their failure to establish the essential elements of a procedural due process claim entitles the mining investigators to summary judgment, as there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The district court properly granted Bill Davis Ford's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Dismissal was proper because it is established beyond a doubt that the appellants cannot prove any set of facts consistent with the allegations that would entitle them to relief. *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–02; *Nishiyama*, 814 F.2d at 279. Appellants may pursue a common law conversion claim in the Kentucky state courts. *See Wagner v. Higgins*, 754 F.2d 186, 191 (6th Cir.1985). Thus, we find that appellants have failed to state a claim for relief under 42 U.S.C. § 1983. *See Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917; *Vicory*, 721 F.2d at 1065–66; *Robbs*, 794 F.2d at 1131.

We therefore conclude that the mining investigators were entitled to summary judgment, and Bill Davis Ford's motion to dismiss was properly granted. Accordingly, the judgment of the district court, the Honorable Karl S. Forester, United States · District Judge for the Eastern District of Kentucky, is AFFIRMED.