916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John E. RENEER; Martha Elaine Rafferty, Individually and on
behalf of her Minor Children, Crystal Rafferty and Jamie
Rafferty; and Daniel Reneer, on behalf of James F. Reneer,
a Minor, Plaintiffs-Appellants,
v.
Frank WALL; Ronald Long; Charles Newton; Keith Haire;
Jerry Epison; Jerald Nickens; Tom Castlen; and
James Werthington, Defendants-Appellees.
 Nos. 89-6288, 89-6294.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges; and ENGEL, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 In this 42 U.S.C. Sec. 1983 action stemming from the execution of search and arrest warrants, plaintiffs John Reneer, Martha Elaine Rafferty, and Daniel Reneer, acting on behalf of James Reneer, appeal from the entry of an adverse judgment following an evidentiary hearing. The plaintiffs contend that the district court erroneously refused to provide counsel for pro se litigants Rafferty and Daniel Reneer, improperly conducted an evidentiary hearing before permitting the plaintiffs to conduct discovery, and reached incorrect factual and legal conclusions in awarding judgment for the defendants. We affirm the judgment with respect to all aspects of the plaintiffs' claims.
 
 I.
 
 2
 On October 7, 1988, Jennifer Davis went to a house on Haynes Avenue in Owensboro, Kentucky, which plaintiff John Reneer shared with Elaine Rafferty, Rafferty's two children, and Reneer's nephew, James. During her stay, Davis observed a pill bottle containing morphine. Later that day, Davis was arrested by Owensboro police detectives Ronald Long and Charles Newton for possession of a controlled substance. Following her arrest, Davis provided statements to the officers corroborating previously existing evidence of a sodomy offense involving John Reneer. Davis further informed detectives Long, Newton, and Frank Wall that John Reneer had morphine in his house. Acting on these disclosures by Davis, the Owensboro detectives immediately sought and obtained a warrant for the arrest of John Reneer on the charge of second degree sodomy. After consultation with Daviess County, Kentucky, commonwealth attorney Tom Castlen and assistant prosecutor James Werthington, the officers also sought and obtained a warrant to search the residence at 1430 Haynes Avenue for evidence of illicit drugs.
 
 
 3
 Officers Long, Newton, and Wall, accompanied by Kentucky state police detective Jerald Nickens and Owensboro police officers Keith Haire and Jerry Epison, executed the warrants by kicking in the door at Reneer's house and arresting him at gunpoint. The officers executing the warrants, who were fully aware that John Reneer had a series of prior convictions for violent crimes and a reputation for being well-armed,[1] entered the house carrying flashlights and brandishing firearms. The officers initially discovered Reneer's nephew, James, sleeping on a couch in the living room. They proceeded immediately to the master bedroom where they encountered John Reneer and Elaine Rafferty. The officers handcuffed Reneer, instructed him to go to the living room couch, and read the warrants to him. Meanwhile, Rafferty, who was naked, was instructed to get out of bed and get dressed. Once she was dressed, she was escorted to her children.
 
 
 4
 In the process of executing the search warrant, the officers discovered marijuana, the pill bottle containing morphine, other drug paraphernalia, and several loaded firearms in the bedroom where Reneer and Rafferty had been sleeping. The plaintiffs candidly admitted that the search proceeded without any threats or violence, and was quickly completed. Within one hour of the officers' entry, John Reneer was in custody at the Daviess County Detention Center.
 
 
 5
 John Reneer subsequently was charged with sodomy and drug possession, and ultimately convicted on both charges. During the course of the prosecutions, Reneer unsuccessfully moved to suppress the evidence discovered during the October 8, 1988, search of his house. Reneer, joined by Rafferty, her children, and James Reneer, then filed this section 1983 action alleging that various officials violated their constitutional rights in obtaining and then executing the search and arrest warrants.
 
 
 6
 Prompted by the defendants' motions to dismiss, the magistrate began an evidentiary hearing on October 18, 1988. Following one day of testimony, the magistrate adjourned the proceedings for more than one week. On October 20, 1988, plaintiffs Rafferty and James Reneer filed a motion to have counsel appointed for them before the hearing reconvened, but the magistrate denied their motion. With all of the plaintiffs participating pro se, the evidentiary hearing was resumed and completed on October 31, 1988. The magistrate ultimately issued extensive findings and a comprehensive recommendation indicating that summary judgment should be granted in favor of the defendants. After receiving the plaintiffs' objections to the recommended decision, the district court appropriately reviewed the magistrate's findings and conclusions de novo, see 28 U.S.C. Sec. 636(b)(1), and granted summary judgment for the defendants. This appeal followed.
 
 
 7
 The plaintiffs have identified three assignments of error for our consideration. First, they assert that the district court erred in refusing to provide them with appointed counsel. Second, they insist that the magistrate acted in a procedurally improper manner by conducting an evidentiary hearing without permitting the plaintiffs to engage in discovery. Finally, they contest the factual findings and legal conclusions underlying the decision by the magistrate and the district court to enter judgment for the defendants. We shall address these issues seriatim.
 
 II.
 
 8
 Pursuant to 28 U.S.C. Sec. 1915(d), a district court "may request an attorney to represent any [in forma pauperis litigant] unable to employ counsel...." Ostensibly relying upon this provision, pro se plaintiffs Elaine Rafferty and Daniel Reneer (on behalf of James Reneer) assert that the district court had an obligation to appoint an attorney to represent them. The text of section 1915(d), however, clearly indicates that court-enlisted assistance of counsel is not mandatory, but merely a matter of discretion. See, e.g., Childs v. Pellegrin, 822 F.2d 1382, 1384 (6th Cir.1987). Here, plaintiff John Reneer's active participation at the hearing and his vigorous briefing of legal issues on behalf of himself and the other plaintiffs belie his fellow plaintiffs' contention that they did not have their issues presented to the district court. Nevertheless, Rafferty and Daniel Reneer argue that the district court abused its discretion in denying their request. Cf. United States v. 30.64 Acres of Land, 795 F.2d 796, 798 (9th Cir.1986) ("Designation of counsel under 28 U.S.C. Sec. 1915(d) is ordinarily at the discretion of the trial court and can only be overturned for abuse of that discretion.").
 
 
 9
 To support their demand for appointed counsel, the plaintiffs cite Henry v. City of Detroit Manpower Dep't, 739 F.2d 1109 (6th Cir.1984), vacated on jurisdictional grounds, 763 F.2d 757 (6th Cir.) (en banc ), cert. denied, 474 U.S. 1036 (1985). In Henry, we suggested that, under certain undefined circumstances, a district court may be compelled to appoint counsel in a pro se section 1983 case despite the judicial discretion associated with the selection process. See id. at 1118-19. The Supreme Court's recent decision in Mallard v. United States District Court for the Southern District of Iowa, 109 S.Ct. 1814 (1989), however, undermines the apparent rationale of Henry that section 1915(d) empowers district courts to craft appointment orders to address the needs of pro se litigants. In Mallard, the Court held that section 1915(d) "does not authorize the federal courts to make coercive appointments of counsel" to represent indigent litigants. See id. at 1823. Writing for the Mallard majority, Justice Brennan contrasted the mandatory terms of section 1915(c) that court officers "shall issue" process and witnesses "shall attend" proceedings with the permissive language of section 1915(d) that a court "may request an attorney to represent" an indigent litigant, and concluded that "Congress evidently knew how to require service when it deemed compulsory service appropriate." Id. at 1818.
 
 
 10
 Here, the magistrate conducting the evidentiary hearing responded to the plaintiffs' request for counsel by stating that "the only thing the Court could do is request an attorney to volunteer and I have no attorneys in Owensboro to make a request to volunteer." Due to the lack of local attorneys willing to volunteer, the magistrate was powerless under Mallard to furnish the plaintiffs with counsel to assist them. Accordingly, we find that the district court was under no obligation to provide the plaintiffs with an attorney, and the court's refusal to do so did not constitute an abuse of discretion.
 
 III.
 
 11
 The plaintiffs contend that the magistrate improperly responded to several defendants' motions to dismiss by conducting an evidentiary hearing while holding all pending discovery requests in abeyance, and then entering what the magistrate and the district court explicitly called "summary judgment" for the defendants. We disagree. The defendants' motions to dismiss identified Federal Rule of Civil Procedure 12(b)(6)--"failure to state a claim upon which relief can be granted"--as the asserted basis for the entry of judgment in their favor. It is manifest that a Rule 12(b)(6) motion merely "test[s] whether a cognizable claim has been adequately alleged in the complaint." See, e.g., Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc., 854 F.2d 135, 136 (6th Cir.1988), cert. dismissed, 109 S.Ct. 2461 (1989). As the Supreme Court explained in Scheuer v. Rhodes, 416 U.S. 232 (1974):
 
 
 12
 When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.
 
 
 13
 Id. at 236 (emphasis added).
 
 
 14
 Under specific circumstances, however, Rule 12(b) provides for the conversion of a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment:
 
 
 15
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
 
 
 16
 In this case, the plaintiffs submitted affidavits in support of their claims, and the district court subsequently scheduled a hearing presumably to afford the parties a "reasonable opportunity to present all material made pertinent" to the converted Rule 56 motion. See Fed.R.Civ.P. 12(b). By choosing to conduct an evidentiary hearing, as compared to a battle of affidavits, the magistrate apparently sought to obtain a more complete understanding of the underlying events before making recommendations on the defendants' dispositive motions. We find no procedural flaw in the magistrate's approach to the dispositive motions.
 
 IV.
 
 17
 The plaintiffs' substantive challenge to the entry of summary judgment includes three aspects. First, the plaintiffs assert that the search warrant for their residence was impermissibly supported by false information, and thus obtained in violation of the fourth amendment. Second, the plaintiffs argue that the defendants who executed the search warrant acted in contravention of the fourth amendment by forcing their way into the residence. Third, the plaintiffs contend that the officers conducted the search in an unconstitutional manner. We shall consider these aspects of the plaintiffs' section 1983 claims individually.
 
 A. The Search Warrant Affidavit
 
 18
 The section 1983 claim premised upon the search warrant affidavit relates exclusively to the Owensboro officers' failure to disclose that Jennifer Davis had given conflicting accounts of her precise activities at the plaintiffs' residence. Davis purportedly told Owensboro law enforcement officials that she had purchased morphine from John Reneer, but later commented that she had merely seen morphine at the residence. The magistrate noted this inconsistency, but found it immaterial. In Hill v. McIntyre, 884 F.2d 271 (6th Cir.1989), we held that "[a]n action under Sec. 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth." Id. at 275 (emphasis added). In this case, Davis consistently described how and where she saw morphine at the residence, Reneer even admitted that Davis had seen morphine pills, and the observation of morphine, regardless of whether a sale actually occurred, provided ample support for the warrant. In this respect, the conflicting statements from Davis concerning the extent of her involvement with morphine at the residence does not vitiate the representation concerning morphine in the affidavit supporting the warrant.[2] The entry of summary judgment on the warrant aspect of the claim, therefore, was proper.[3]
 
 B. The Forced Entry
 
 19
 In United States v. Francis, 646 F.2d 251 (6th Cir.), cert. denied, 454 U.S. 1082 (1981), we observed that "[t]he Supreme Court has not ruled whether the fourth amendment requires police officers executing a search warrant to knock, announce their purpose, and be refused admittance before they may break down the door of a building to enter it." Id. at 257. That statement remains true today. However, we reached the constitutional issue in Francis, deciding that "the fourth amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances." Id. at 258. Accordingly, the forced entry in this case was constitutionally reasonable if, but only if, exigent circumstances existed. See id.; see also Commonwealth v. Gross, 758 S.W.2d 436, 437 (Ky.1988) (Under Kentucky law, "when exigent circumstances exist, a search warrant may be executed at any time.").
 
 
 20
 As we recently indicated, "factual findings on the existence of exigent circumstances will be disturbed only if they are clearly erroneous[,]" United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990), but we must review de novo "legal conclusions with respect to the issue of exigency." Id. Three independent factual findings regarding the officers' knowledge support the determination of exigent circumstances: (1) John Reneer was in possession of drugs; (2) John Reneer had a history of destroying evidence; and (3) John Reneer was known to be armed. The findings that the officers were aware of these facts, in our view, are not clearly erroneous. The dispositive question, then, is whether these facts, when viewed collectively, provided exigent circumstances justifying the officers' forced entry. Because an announced entry would have been potentially dangerous and would have involved a substantial risk that evidence could be destroyed, we find that exigent circumstances were present. See also Simons v. Montgomery County Police Officers, 762 F.2d 30, 32-33 (4th Cir.1985) (section 1983 suit challenging constitutionality of search previously scrutinized in state suppression hearing), cert. denied, 474 U.S. 1054 (1986). Accordingly, the plaintiffs' section 1983 claim predicated upon the forced entry was properly rejected.
 
 C. The Search of the Residence
 
 21
 The final aspect of the plaintiffs' section 1983 claim concerns the manner in which the officers conducted the warrant-based search. The plaintiffs concede that the execution of the search warrant was not accompanied by any threats or violence. Nevertheless, Elaine Rafferty contends that the officers violated her fourth amendment rights because they "could have handed me my robe" or "could have turned around and not watched" when she walked to the foot of the bed to retrieve her robe and clothe herself. In Collins v. Nagle, 892 F.2d 489 (6th Cir.1989), we explained that "[t]he fourth amendment reasonableness standard does not turn on the availability of less intrusive alternatives." Id. at 493. Accordingly, we do not find that the refusal by one officer to hand plaintiff Rafferty her robe rendered an otherwise proper search unconstitutional.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Reneer conceded at the hearing that he had been convicted of robbery in 1966, conspiracy to commit murder in 1972, and escape in 1976
 
 
 [2]
 Although a criminal conviction does not, of itself, bar a subsequent section 1983 action contesting the legality of a search that produced evidence supporting the conviction, see Haring v. Prosise, 462 U.S. 306 (1983), John Reneer's claim concerning the warrant affidavit may nonetheless be subject to the preclusive effect of collateral estoppel based upon the denial of his suppression motion in the state court criminal proceeding where he was convicted. See 28 U.S.C. Sec. 1738; see also Allen v. McCurry, 449 U.S. 90, 105 & n. 25 (1980)
 
 
 [3]
 Because of our affirmance on the theory applied by the district court, we need not reach the alternative argument of defendants Castlen and Werthington that they are entitled to absolute prosecutorial immunity