In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2188

MOUHAMADOU M. SOW,

*Plaintiff-Appellant*,

*v.*

FORTVILLE POLICE DEPARTMENT, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-0983—**Richard L. Young**, *Chief Judge*.

ARGUED DECEMBER 8, 2010—DECIDED FEBRUARY 11, 2011

Before FLAUM and EVANS, *Circuit Judges*, and MCCUSKEY, *District Judge*.[*]

MCCUSKEY, *District Judge*. Plaintiff-Appellant, Mouhamadou M. Sow, was arrested for forgery based upon information that he tried to cash a fake money order. Plaintiff

---

[*] The Honorable Michael P. McCuskey, United States District Court for the Central District of Illinois, sitting by designation.

was later able to produce a receipt for the money order and the charge against him was dismissed.

On July 24, 2008, he filed a Complaint in the Southern District of Indiana. Plaintiff named as Defendants: the United States of America, U.S. Postal Employees Lynnette Hertzer and Brenda Rains, Fortville Police Department, McCordsville Police Department, and Officer Michael Fuller of the Fortville Police Department in his individual and official capacities. Plaintiff's action was brought under 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff also alleged numerous state law claims, asserting that the district court had supplemental jurisdiction over those claims.

On December 17, 2008, the district court dismissed the U.S.A., Hertzer and Rains from the lawsuit. On April 13, 2010, the district court entered two orders and granted summary judgment in favor of the three remaining Defendants—the Fortville Police Department, Fuller, and the McCordsville Police Department. Plaintiff has appealed from the final orders of the district court which entered summary judgment. We affirm.

FACTS

Plaintiff is from Dakar, Senegal, West Africa. He has been a citizen of the United States since 1996. In November 2007, Plaintiff was involved in selling African items like old masks, statues and clothing. As part of his business, Plaintiff purchased merchandise from Africa and sold the merchandise all over the United States at state fairs, county fairs and festivals.

Plaintiff owned a wrecked Toyota Sequoia. His friend, Biran Tall, told him that he could get spare parts he needed for the vehicle in Fortville, Indiana. On November 19, 2007, Plaintiff came to Fortville in a custom van which had tinted windows and a cardboard temporary plate posted in the back window. Before coming to Indiana, Plaintiff had purchased money orders from the Eastland Post Office in Columbus, Ohio. The price for the parts Plaintiff needed was $775 and Plaintiff attempted to purchase the parts with a $1000 money order. The dealer did not have sufficient money for change and directed Plaintiff to the Fortville Post Office.

At the Fortville Post Office, Plaintiff waited patiently in line and then presented the $1000 money order to a female clerk, Brenda Rains. Rains held the money order up and told Plaintiff that it was fake because the serial numbers were not right and the watermark did not resemble Benjamin Franklin, the image present on all official money orders. Rains thought the watermark looked like Jesus Christ. Plaintiff advised Rains that he purchased the money order at a U.S. Post Office in Columbus, Ohio. Rains went to the back office to show it to her supervisor. When she came back she told Plaintiff they did not have enough cash to negotiate the money order. Rains told Plaintiff there was a post office nearby in McCordsville and gave Plaintiff directions how to get there. While Rains was talking to Plaintiff, another postal employee, Lynette Hertzer, searched the parking lot to obtain a description of Plaintiff's vehicle. After Plaintiff left, Hertzer called the Fortville police "to report [her]

suspicions" and Hancock County dispatched a radio transmission regarding the report.

Officer Fuller of the Fortville Police Department received the transmission and soon arrived at the post office. The employees informed Fuller that an individual had attempted to pass a $1000 money order which appeared to be fake. Fuller was also informed that Plaintiff had just left and was traveling to the McCordsville Post Office to attempt to cash the money order. Fuller passed this information to the McCordsville Police Department by radio and also provided a description of Plaintiff's van, which he had been given at the post office.

McCordsville Police Officer Michael Schwamberger stopped Plaintiff's van in McCordsville. Schwamberger stopped the vehicle because it did not appear to have a proper registration plate and because it fit the description of the vehicle provided by Fuller. Officer Scott Prather of the McCordsville Police Department arrived at the scene during the stop. The stop was videotaped and the videotape showed that the stop lasted more than one hour. During the stop, Plaintiff produced a Florida Driver's License bearing a New York address and did not produce a vehicle registration.

Fuller arrived on the scene and spoke to Plaintiff, who produced the $1000 money order that he had tried to cash at the post office. Fuller and Schwamberger both inspected the money order and concluded the watermark did not resemble Ben Franklin but rather looked like Jesus Christ. They asked Plaintiff for a receipt for the money order and Plaintiff was unable to produce one.

Plaintiff did produce a backpack full of other money order receipts and other documentation. During the stop, Fuller called post office headquarters in Baltimore, Maryland. Fuller was informed that the serial numbers from the $1000 money order were not in a format used or recognized by the U.S. Post Office. Fuller also called Craig Jones, the postal inspector in Indianapolis, who told him the same thing. Jones said that, due to the watermark not being the picture of Benjamin Franklin, the money order was fake. Jones also told Fuller that the federal government would not prosecute the case because of the small amount of money involved. Jones concluded by saying that the matter would have to be handled by local authorities.

Plaintiff gave Fuller a $500 money order that he had purchased on the same day and at the same time as the $1000 money order, along with a receipt for the $500 money order. The receipt included the telephone number for the Columbus, Ohio post office where the money order was purchased. Fuller failed to call the Columbus, Ohio post office. In addition, according to Plaintiff, the officers did not allow him to continue looking in his back pack for the receipt for the $1000 money order. Fuller did contact Jerry Bean, the Chief Deputy Prosecutor for Hancock County, and was advised to arrest Plaintiff for forgery. Plaintiff was read his Miranda rights and handcuffed.

Plaintiff testified that the officers searched his van without permission. Moreover, according to Plaintiff, the video shows that the officers searched the van. Plaintiff testified that he was wearing three or four

African protection belts that he received from his parents and believed were important to protect him from bad things like accidents. During the arrest, Schwamberger grabbed and cut the belts and threw them into Plaintiff's van. Plaintiff was very upset because he did nothing wrong and this was the first time he had had any trouble with the police. Plaintiff testified that he was pushed into the police car and hit his head as he was pushed and thrown into the vehicle. He testified that he temporarily lost consciousness. Plaintiff testified that he later suffered from headaches and purchased over-the-counter pain medication and sought psychiatric treatment and traditional African treatment when he returned to Senegal two or three weeks later. Plaintiff also testified that the handcuffs were too tight and painful. Plaintiff said that he complained to Fuller once that the handcuffs were too tight and Fuller refused to loosen them.

Following the arrest, Schwamberger transported Plaintiff to the McCordsville Post Office. Fuller met them there in his own vehicle. Fuller and Schwamberger spoke to the post office employees at McCordsville who were of the opinion that the money order was counterfeit. These postal employees provided the officers with an official money order. The officers compared it to the $1000 money order and concluded that the watermarks were different. Fuller subsequently transported Plaintiff to the Hancock County Jail. Plaintiff did not complain to jail officials or receive treatment at the jail for a bump on his head or handcuff pain. Plaintiff was

held for about 48 hours until his friends and family collected money and posted his bond.

After Plaintiff was released from jail, he found the receipt for the $1000 money order and hired counsel. The criminal charge against Plaintiff was subsequently dismissed.

In the order granting summary judgment to Fuller and the Fortville Police Department, the district court found: (1) there was ample evidence providing probable cause to arrest Plaintiff so his false arrest claim failed; (2) Plaintiff's excessive force claim failed because he complained about his handcuffs only once and did not complain to any officer about his bumped head; (3) there was no evidence to support Plaintiff's claim of racial profiling under the Equal Protection Clause of the Fourteenth Amendment; (4) Plaintiff's claim of conspiracy under §§ 1985 and 1986 failed because it was based on nothing but conjecture and speculation; (5) the Fortville Police Department was not a proper party because it lacked the capacity to sue or be sued; and (6) Plaintiff did not respond to the arguments regarding his state law claims, except for his claim of negligent supervision, which failed because Plaintiff did not sue the proper party, the Town of Fortville.

The district court also stated that there was no merit to Plaintiff's negligent supervision claim, which was really a failure to train claim. The court concluded there was no evidence that Fuller engaged in racial profiling at the time he investigated and arrested Plaintiff. The court further concluded that the evidence showed Fuller was

in fact trained regarding racial profiling at the police academy. Because of these conclusions, the district court did not reach the issue of qualified immunity.

The district court granted summary judgment to the McCordsville Police Department because it found the police department was not a proper party in this case. Following the two orders granting summary judgment, the case was terminated, and Plaintiff appealed.

ANALYSIS

Plaintiff has raised four issues on appeal: (1) whether the district court improperly considered hearsay testimony when determining that the police officers had probable cause to arrest him on charges of committing forgery under Indiana law; (2) whether the district court erred by granting summary judgment on his claims that he was arrested without probable cause in violation of his Fourth Amendment rights against unreasonable searches and seizures and his Fourteenth Amendment rights to equal protection; (3) whether the district court erred when it granted summary judgment in connection with his claims under §§ 1985 and 1986; and (4) whether the district court erroneously held that Plaintiff failed to discuss his state law claims thus granting summary judgment on those claims.

We review a district court's order granting summary judgment de novo. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 (7th Cir. 2006). In doing so, this court construes all facts and reasonable inferences in favor of the non-

moving party. *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009), citing Fed. R. Civ. P. 56(c) (Rule 56 was amended, effective December 1, 2010, and the standard is now included in Rule 56(a)).

In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and must present sufficient evidence to create genuine issues of material fact to avoid summary judgment. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

The district court entered summary judgment in favor of the McCordsville Police Department based on the court's finding that it was not a proper party in this action. The district court also concluded that the Fortville Police Department was not a suable party. We agree that the McCordsville Police Department and the Fortville Police Department were not proper parties. The United States Supreme Court has instructed that local government liability under § 1983 "is dependent on an analysis of state law." *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997). Under Indiana law, a "[m]unicipal corporation" is a "unit, . . . or other separate local governmental entity that may sue and be sued." Ind. Code § 36-1-2-10. A "'[u]nit' means county, municipality, or township," Ind. Code § 36-1-2-23, and a "[m]unicipality" is a "city or town," Ind. Code § 36-1-2-11. Thus, the Indiana statutory scheme does not grant municipal police departments

the capacity to sue or be sued. See *Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3 (N.D. Ind. 2010). Therefore, the district court properly concluded that the McCordsville Police Department and the Fortville Police Department are not suable entities.

Although Plaintiff did not raise this as one of his listed issues on appeal, he has argued that the Town of McCordsville and Town of Fortville can be found liable in this case. As to the Town of McCordsville, Plaintiff argued that it can be liable because two of its officers were involved in Plaintiff's arrest. This argument is not persuasive. The Town of McCordsville was not named as a party nor were either of the McCordsville police officers, in any capacity. Therefore, the district court properly entered summary judgment in favor of the McCordsville Police Department.

As to the Town of Fortville, Plaintiff argued that it can be liable because Fuller was sued in his individual and official capacities. Plaintiff is correct that he sued Fuller in his official capacity and an official capacity suit is another way of pleading an action against an entity of which the officer is an agent. See *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). Therefore, Plaintiff's official capacity suit against Fuller can be treated as a suit against the Town of Fortville. Nevertheless, we conclude that Plaintiff has not provided evidence which would provide a basis for liability on the part of the Town of Fortville under *Monell*. As thoroughly discussed below, Plaintiff has not shown that he suffered

a constitutional deprivation. Accordingly, Plaintiff has not shown that a constitutional deprivation was caused by an official policy or custom, which is necessary for municipal liability under *Monell*. See *Monell*, 436 U.S. at 694.

With this preliminary issue out of the way, we will now discuss each of the issues raised by Plaintiff in this appeal.

## I. Objection to Hearsay Evidence

Plaintiff first argues that the district court should have stricken from the record evidence of statements made to Fuller by the post office headquarters in Baltimore, Maryland, by Craig Jones, by Deputy Prosecutor Bean and by the post office employees who were consulted regarding the validity of the $1000 money order. Plaintiff insists the evidence regarding statements made by third parties is inadmissible hearsay which could not be considered in ruling on the motions for summary judgment.

Plaintiff is correct that a court may consider only admissible evidence in assessing a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009), citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). However, we conclude that the district court properly considered the statements made by third parties to Fuller in determining whether there was probable cause for the arrest. The statements were not offered for their truth, but to show the basis for Fuller's decision

to arrest Plaintiff. "The determination of whether an arresting officer has probable cause to arrest an alleged offender turns on whether a reasonable person in the officer's position would have probable cause to believe that an offense has been committed." *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). Therefore, the inquiry "depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief." *Id.* at 987; see also *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003) (probable cause is determined by "the facts and circumstances within [the officer's] knowledge at the time of the arrest"). It is therefore proper for the district court to consider statements made to the officers to determine "the effect that they would have upon the arresting officers when communicated to them by a presumptively reliable citizen." *Woods*, 234 F.3d at 987.

## II.  Summary Judgment on § 1983 claims

Plaintiff has presented detailed arguments regarding the length of the traffic stop, the search of his vehicle and other aspects of his treatment during his arrest.

### A.  Waiver of claim regarding search

Defendants have pointed out that Plaintiff did not include a claim in his complaint regarding the search of his vehicle. Therefore, because it was not raised as a claim, the district court did not discuss the search in

its orders granting summary judgment for Defendants. "It is axiomatic that issues and arguments which were not raised before the district court cannot be raised for the first time on appeal." *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008), quoting *Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 811-12 (7th Cir. 1988). Consequently, the constitutionality of any search of Plaintiff's vehicle is not an issue before this court.

## B.  Unlawful arrest claim

Plaintiff did claim that he was unlawfully arrested. The constitutionality of a warrantless arrest for a criminal offense turns on the existence of probable case for the arrest. *Woods*, 234 F.3d at 992. "Probable cause is an absolute bar to a § 1983 claim for false arrest." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *Id.* at 707, citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Plaintiff insists that Fuller intentionally disregarded readily available and pertinent information regarding the origin of the money order. Plaintiff argues Fuller had a receipt containing the phone number of the post office in Ohio where the money order was purchased but rejected Plaintiff's request that he contact the Ohio post office. At oral argument, Plaintiff's counsel cited *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986), to support his argument that Fuller should have called the Ohio post office

as part of his investigation. We do not agree that Plaintiff's arrest was unlawful because of Fuller's failure to contact the Ohio post office.

Based upon all of the information Fuller received from various sources, he had ample reason to conclude that the $1000 money order in Plaintiff's possession was fake and reasonably concluded that Plaintiff had committed the offense of forgery. When an officer receives information from a third party whom it seems reasonable to believe is telling the truth, the officer has probable cause to effectuate an arrest. See *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998). In this case, Fuller received information from employees at the Fortville Post Office, from the post office headquarters in Baltimore, Maryland, and from the postal inspector in Indianapolis. Fuller had every reason to believe that these people were giving him truthful, accurate information. Therefore, it was reasonable for Fuller to believe that no further action was necessary on his part. As this court has noted, " '[p]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters.' " *Id*. at 647, quoting *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986). Also, in addition to the information received from these sources, Fuller relied on his own observations and the fact that Plaintiff could not produce a receipt for the $1000 money order.

We conclude that, because Fuller had probable cause to arrest Plaintiff, he was not required to contact the Ohio post office as Plaintiff requested. "An officer should

pursue reasonable avenues of investigation and may not close his eyes to facts that would clarify the situation, but once an officer has established probable cause, he may end his investigation." *McBride*, 576 F.3d at 707. The Fourth Amendment imposes no duty to investigate whether a defense is valid. *Id.* at 707.

We also conclude that *BeVier*, the case relied on by Plaintiff, is distinguishable from the case at hand and does not support Plaintiff's argument. In *BeVier*, the plaintiffs were arrested and charged with child neglect, even though the police officer did not question the babysitter watching the children or the parents about the children's condition. *BeVier*, 806 F.2d at 126-27. This court held that the police officer did not have probable cause to arrest the plaintiffs, noting that he did not obtain information which was necessary before concluding that the plaintiffs had intentionally neglected their children. *Id.* at 127-28. The court stated that "[r]easonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place." *Id.* at 128.

Here, in this case, Fuller received information from sources he reasonably believed were reliable that the money order Plaintiff had attempted to cash at the Fortville Post Office was fake. From this evidence, we conclude that there was no reason for any uncertainty regarding whether a crime had taken place. Accordingly, Fuller had probable cause to arrest Plaintiff and was not required to pursue any further investigation.

### C.  Equal Protection claim

We also agree with the district court's finding that Plaintiff has not shown that he was the victim of racial profiling in violation of his right of equal protection. Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause. See *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001). However, in order to survive summary judgment on this claim, Plaintiff was required to provide evidence that Fuller was "motivated by a discriminatory purpose." See *id.* at 635-36; see also *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996). We agree that there is no evidence in the record which would support a finding of racial profiling by Fuller.

### D.  Excessive Force claim

We further conclude the district court properly determined that Plaintiff has not shown the existence of a genuine issue of material fact as to his claim of excessive force. Plaintiff argues he was the victim of the excessive use of force because he was out in the cold during the lengthy stop, he bumped his head while being pushed into the squad car following his arrest, and the handcuffs were too tight.

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Law enforcement is a

difficult job, as 'police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving.'" *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009), quoting *Graham*, 490 U.S. at 397. Therefore, the "reasonableness" of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396.

Plaintiff has cited no case law to provide support for his argument that he was subjected to excessive force merely because he was outside during the investigation. In fact, Plaintiff has failed to present evidence that Fuller forced Plaintiff to remain outside in the cold. Plaintiff's bare assertion that he was outside in the cold during the investigation does not support a claim of excessive force.

Plaintiff has relied on *Baird* to support his claim that his bumped head amounted to excessive force. In *Baird*, this court found that a police officer violated the plaintiffs' Fourth Amendment rights. In that case, the officer used a submachine gun to round the plaintiffs up and detain them during the execution of a search warrant that was based on the crime of altering a vehicle identification number. *Baird*, 576 F.3d at 344-45. In doing so, the court noted that "[p]laintiffs need not show physical injury in order to sustain an excessive force claim." *Id.* at 344. The court also noted that it had previously observed, in a slightly different context, that "'police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation what-

soever.'" *Id.* at 345, quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). In *Clash*, the plaintiff, who was not arrested or charged with any crime, was treated for a trauma injury to his knee after he was pushed into a police car. *Id.* at 1047.

The push in the case at hand occurred after Plaintiff was arrested based upon probable cause to believe that he had committed the crime of forgery. Accordingly, the facts here are clearly distinguishable from *Baird* and *Clash*. The right to make an arrest necessarily carries with it the right to some degree of physical coercion to effect it. *Graham*, 490 U.S. at 396. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'" violates the Fourth Amendment. *Id.* at 396, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). In this case, we conclude that the fact that Plaintiff bumped his head while being placed into the squad car following his arrest is not sufficient to establish a genuine issue of material fact whether excessive force was used in effecting the arrest.

We reach a similar conclusion regarding Plaintiff's claim that the handcuffs were too tight. In *Tibbs*, the plaintiff complained that his handcuffs were too tight twice, once during the ride to the police station and once to an unknown officer at the police station. *Tibbs*, 469 F.3d at 663. The facts in *Tibbs* reflected that the officers removed the handcuffs approximately 25 minutes after the plaintiff arrived at the police station. In *Tibbs*, the plaintiff's wrists were red for approximately one-and-a-half days, and the plaintiff received no medical care

for wrist pain. *Id.* at 663. This court noted that the plaintiff complained only once to the arresting officer in *Tibbs* "without elaborating on any injury, numbness, or degree of pain" and neither sought nor received medical care for any alleged wrist injury. *Id.* at 666. This court concluded that, given such "mild allegations," no reasonable jury could find that the arresting officer's actions were objectively unreasonable. *Id.* at 666.

In this case, the facts in many respects are indistinguishable from the facts in *Tibbs*. Plaintiff testified that he complained once to Fuller that the handcuffs were too tight. Plaintiff presented no evidence that he provided any elaboration to Fuller. Moreover, the evidence shows that Plaintiff did not complain of any injury when he was taken to jail and did not receive any treatment resulting from the use of the handcuffs. These facts are not sufficient to raise a genuine issue of material fact regarding whether Fuller used excessive force. See *Tibbs*, 469 F.3d at 666; see also *Stainback*, 569 F.3d at 773 (officers' actions were reasonable under the circumstances even though the plaintiff claimed the officers' actions in handcuffing him and keeping him in handcuffs resulted in two torn rotator cuffs, due to a pre-existing shoulder condition).

## III. Conspiracy

Plaintiff alleged in his complaint that Fuller, Rains, Hertzer and others "engaged in a conspiracy to deprive [him] of his civil rights by collaboratively embarking in a scheme that recklessly ascribed criminal conduct on

[Plaintiff] and caused his unlawful arrest and detention." Plaintiff alleged that Defendants were therefore liable under 42 U.S.C. §§ 1985 and 1986. In this appeal, Plaintiff argues that a reasonable jury could infer that Hertzer, Rains, Fuller, and the officers from McCordsville conspired to deprive Plaintiff of his constitutional rights. Plaintiff argued that the record contains circumstantial evidence of a conspiracy, noting that it was well established that "Fortville is a predominantly white town."

We agree with the district court that Plaintiff presented no evidence of a conspiracy other than speculation and conjecture. To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 262.

The district court correctly found from the record that there was no evidence that Fuller or any of the other individuals involved in this incident conspired to deprive Plaintiff of his constitutional rights. A conspiracy cannot be inferred solely based upon the fact that the alleged conspirators were white and were from a predominantly white area. The district court also correctly determined that the absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff

succeeding on a conspiracy claim. See *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999).

## IV. State law claims

Finally, we agree that Plaintiff waived all but one of his state law claims by failing to argue that the claims were sufficient to survive summary judgment. The only claim specifically argued by Plaintiff, negligent supervision, fails because there was no evidence presented before the district court that would support a conclusion that Fuller was negligently supervised or inadequately trained.

## CONCLUSION

For the reasons stated, the ruling of the district court is AFFIRMED.