NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 4, 2013
Decided June 10, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 12-2894 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| PAMELA MERCER, *Plaintiff-Appellant*, | |
| | No. 09 CV 05565 |
| *v.* | |
| COOK COUNTY, ILLINOIS, et al., *Defendants-Appellees*. | **Young B. Kim**, *Magistrate Judge*. |

**O R D E R**

Pamela Mercer is a Correctional Sergeant at the Sheriff's Office of Cook County, Illinois. Citing allegedly hostile verbal and physical incidents and the discovery of sexually explicit graffiti in her workplace, Mercer filed a number of complaints with the Internal Affairs Division of the Sheriff's Office. Mercer was then temporarily moved to a different department within the Sheriff's Office during the ensuing investigation. Subsequently, Mercer brought an action against Cook County, the Sheriff's Office, her supervisors, and her union, alleging gender-based harassment and discrimination in violation of Title VII and the Equal Protection clause. After Mercer dropped the claims against her union, the

remaining defendants moved for summary judgment. The district court granted the motion for summary judgment and denied Mercer's subsequent motion for reconsideration. Mercer timely appealed. We affirm.

## I. Factual Background

Pamela Mercer began working as a Corrections Officer at the Sheriff's Office of Cook County, Illinois, in 1988. She was promoted to the rank of Correctional Sergeant in 1993. In 2005, Mercer was assigned to the 11:00 p.m. to 7:00 a.m. shift in the Department of Community Service and Intervention (the "Department"). Along with two other sergeants, a female and a male, Mercer supervised approximately fifteen to twenty correctional officers. Two male lieutenants, Gus Paleologos[1] and David Pitts, supervised the sergeants.

The record reveals that in February 2007 Mercer first formally complained about conflicts she had with fellow officers. Specifically, Mercer filed a complaint with the Internal Affairs Division of the Sheriff's Office alleging that Paleologos and Chief Trebilco[2] intimidated her during a meeting concerning complaints made by a subordinate officer against Mercer. Mercer also alleged that Pitts used foul language, that Paleologos touched her on the face without her permission, and that officers often slept during their shifts.[3]

On August 15, 2007, Mercer discovered sexually explicit graffiti on a unisex-bathroom door, in the female correctional officers' locker room, and also in a stairwell. She reported the graffiti to Paleologos and asked him to clean the unisex-bathroom door. Paleologos promptly removed the graffiti, but he did not photograph it. Paleologos and

---

[1] The record, the parties, and the district court use both "Paleologos" and "Paleologus." For consistency, we use "Paleologos"—the spelling provided in Mercer's complaint and on the docket sheet.

[2] The parties do not identify Chief Trebilco's first name, gender, or position within the hierarchy of the Sheriff's Office. Based on the title, we presume that Chief Trebilco is a superior to both Paleologos and Mercer. Regardless, Chief Trebilco's position does not matter to this appeal because Mercer does not rely upon any encounter with the chief as support for her claims.

[3] On appeal, Mercer does not rely upon her allegation that Paleologos touched her on the face as support for her claims.

Pitts conducted an investigation but failed to locate witnesses or discover the identity of the perpetrator. The lieutenants announced at several roll calls that such behavior would not be tolerated and would result in discipline.

On August 31, 2007, Mercer filed a second complaint with the Internal Affairs Division in which she named Paleologos, Pitts, seven officers, Chief Trebilco, and "various other parties named or not named in the attached documentation." Mercer complained of "ghost payrolling, uniform infractions, insubordination by staff, smoking and more without any discipline being given . . . ." Further, Mercer stated that "[s]ince I have taken the initiative to do my job, I have been subjected to being physically pushed by a subordinate . . . derrogatory (sic) markings and graffiti . . . ." On September 18, Mercer filed a third complaint with the Internal Affairs Division in which she contended that Pitts angrily confronted her about her second complaint.

On October 2, 2007, Mercer filed a fourth complaint with the Internal Affairs Division in which she contended that Paleologos unfairly disciplined her based on "subjective parameters." In this complaint, Mercer alleged that Paleologos was retaliating against her for her prior complaints. Her fourth complaint also contained allegations that her coworkers' work performance was consistently sub-par, and that she was being targeted because she worked hard and expected her subordinates to perform better.

After Mercer filed her fourth complaint, the Sheriff's Office reassigned her, for the duration of the investigation, to the division where she had worked before coming to the Department. Mercer objected and requested that the persons about whom she had complained be moved instead. Timothy Kaufmann, the Chief Investigator, denied that request and explained that moving all of the alleged harassers would not be feasible.[4] Kaufmann further observed that the decision to move Mercer was necessary to remove her from the allegedly hostile work environment. Mercer returned to the Department in October 2008, presumably because the investigation into her complaints had ended.[5]

---

[4] Kaufmann also noted that there was a pending complaint against Mercer.

[5] Although her reassignment lasted about one year, Mercer testified that she spent nearly ten and one-half months of that time period on FMLA and medical leave.

Additionally, Mercer identifies a number of specific incidents that she contends constitute gender-based harassment. But she cannot recall the exact date of these incidents, and we cannot determine from the record whether Mercer raised these specific incidents in her above-mentioned complaints to the Internal Affairs Division. First, Mercer testified in her deposition about an obscene remark Pitts made to her. Specifically, Mercer testified that she was "having a silly conversation" with Pitts and another officer. She testified that she said something to Pitts (she could not remember what), and that he responded by saying "oh, go play with yourself." Mercer testified that she reported this remark to Paleologos who said that he would talk to Pitts about his language.

Second, Mercer testified that she was standing at a post near a building entrance and that Paleologos, who was walking by, bumped into her. Mercer testified that the contact was hard enough that she expected him to acknowledge it, but that he did not and merely kept walking. Mercer also testified that she remarked to an officer who was present, "[I]s my [back side] so wide that this man can't get past me without touching me[?]"

Third, Mercer testified that a subordinate, Officer J. Faezell, showed her a bullet and said, "I got a bullet with your name on it." Fourth, Mercer testified that another subordinate, Officer William Rodriguez, a large male, aggressively challenged her "on doing [her] job" in front of inmates. Fifth, Mercer testified that a third subordinate, Officer Donald Ford, bumped into her when he quickly removed a hoodie that he was wearing. Mercer testified that she had ordered him to remove the hoodie because he was on duty and out of uniform. Sixth, Mercer testified that Officer Ford flailed his arms at her when she told him he was late for his shift. Seventh, Mercer testified that she heard a male co-worker, Sergeant Wright, refer to "those bitches" in a conversation with other officers. Eighth, Mercer testified that a female subordinate, Officer Reed, said "oh, bitch" to Mercer. Mercer testified that she told Officer Reed: "[P]recious, we don't joke like that. We don't play like that. I am not one of your friends. Do not ever refer to me like that again."

Subsequently, Mercer brought an action in federal court against Cook County, the Sheriff's Office, her union (AFSCME Council 31—Local 3692), as well as Paleologos and Pitts in their individual capacities. Mercer alleged gender-based and race-based harassment and discrimination in violation of Title VII, sexual harassment in violation of the Equal Protection clause, retaliation in violation of the First Amendment, and intentional infliction

of emotional distress.[6] She also alleged that her union had failed to represent her. Finally, Mercer sought indemnification from Cook County pursuant to state law.

After Mercer conceded that her union should be dismissed from the action, the remaining defendants moved for summary judgment. Mercer conceded that the defendants were entitled to summary judgment with respect to a number of her claims, including her race-based hostile work environment claim and First Amendment retaliation claim. However, she opposed summary judgment on her harassment claim based on gender, her discrimination claims based on gender and race, and her request for indemnification.[7] The district court granted summary judgment and dismissed Mercer's action.[8] Mercer appealed.

## II. Discussion

On appeal, Mercer contends that the district court erred in granting the defendants summary judgment on her gender-based harassment and discrimination claims and her

---

[6] Mercer brought her Equal Protection and First Amendment claims via 42 U.S.C. § 1983.

[7] In her opposition to summary judgment, Mercer referred to Title VII and Equal Protection retaliation claims. However, her complaint appears to lack such claims; it asserts only a First Amendment retaliation claim. The opinion disposing of the defendants' motion for summary judgment does not address Title VII or Equal Protection retaliation claims. However, the district court dismissed Mercer's entire action, and the opinion denying Mercer's motion for reconsideration states that the motion for summary judgment was granted with respect to all of Mercer's claims. Regardless, Mercer does not pursue her retaliation claims on appeal, so we will not consider them. *See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 432 (7th Cir. 1998) ("On appeal, [the appellant] has abandoned both arguments . . . since arguments not raised in a brief are waived.").

[8] Pursuant to the parties' joint consent, the defendants' motion for summary judgment was resolved by Magistrate Judge Martin C. Ashman. After Judge Ashman's passing, Pamela Mercer's motion for reconsideration was resolved by Magistrate Judge Young B. Kim.

indemnification claim.[9] We review an order granting summary judgment *de novo*. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 299 (7th Cir. 2011). And we construe all facts and reasonable inferences in favor of the non-moving party. *Id.* at 300. Summary judgment is only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

A.      **Hostile Work Environment**

Mercer alleges that she was subjected to a hostile work environment at the Department based on her gender. To establish a *prima facie* case on this claim, Mercer must offer evidence that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [gender]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability." *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012) (internal quotation marks omitted). In determining whether her work environment was "hostile," we consider the totality of the circumstances including such factors as the severity of the allegedly harassing conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with Mercer's work performance. *Id.* at 955-56; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Furthermore, an employer may not be held liable for a hostile work environment created by coworkers if the employer promptly and adequately responds to the harassment. *Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 994 (7th Cir. 2011).

In support of her hostile work environment claim, Mercer relies upon the sexually explicit graffiti as well as the eight other incidents recounted above—namely, (1) Pitts' comment to her to "go play with yourself"; (2) the occasion when Paleologos bumped into her backside; (3) Officer Faezell's statement that he had a bullet with Mercer's name on it; (4) the occasion when Officers Rodriguez aggressively challenged her in front of inmates; (5) the occasion when Officer Ford bumped into her when removing his hoodie; (6) the occasion when Officer Ford flailed his arms at her; (7) Sergeant Wright's reference to "those bitches"; and (8) Officer Reed's comment "oh, bitch."[10]

---

[9] At oral argument, Mercer's counsel conceded that summary judgment was appropriate with respect to Mercer's discrimination claims based on race.

[10] In her brief, Mercer states that she "began in March 2007 documenting staff intimidation and insubordination, discrimination and harassment . . . ." In support of this

We conclude that these incidents were not severe or pervasive enough to create a hostile work environment. Paleologos and Pitts promptly removed the graffiti, conducted an investigation that failed to locate witnesses or discover the perpetrator, and announced at several roll calls that such behavior would not be tolerated and would result in discipline. No additional sexually graphic incidents were reported after Paleologos and Pitts issued these warnings. Thus, this incident cannot serve as a basis for a hostile work environment claim against the defendants because the undisputed facts demonstrate that the defendants promptly and adequately responded to the sexually explicit graffiti.[11]

Sergeant Wright's statement ("those bitches"), Officer's Reed's comment ("oh, bitch"), and Pitts' comment ("go play with yourself") were, in context, the kind of boorish or offensive stray remarks that were "neither severe or pervasive enough to create an objectively hostile work environment." *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *see, e.g.*, *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (affirming summary judgment); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (same); *cf. Passananti v. Cook Cnty.*, 689 F.3d 655, 664–70 (7th Cir. 2012) (reversing judgment as a matter of law for employer); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807–08 (7th Cir. 2000) (reversing summary judgment for employer). Additionally, given that Officer Reed is a woman, it is improbable that Officer Reed was expressing hostility based on Mercer's

---

claim, she cites an interoffice memorandum, which she authored, that discusses a complaint made against her by a subordinate officer. This memorandum addresses an incident in which, Mercer alleges, the subordinate misused his radio and failed to perform certain job duties. Because Mercer does not discuss this incident in her brief, we have not included it in our discussion of Mercer's evidence. *See Rabine*, 161 F.3d at 432. Even if she had, this memorandum would not help her because nowhere in it is there any indication that the conflict had anything to do with her gender.

[11] Mercer contends that Paleologos and Pitts should have photographed the graffiti before removing it, and that their failure to do so rendered their response inadequate. However, in light of Paleologos and Pitts' investigation and effective warnings, the fact that Paleologos and Pitts did not photograph the graffiti before removing it is insufficient to establish that their response was inadequate. *See Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 637 (7th Cir. 2009) ("There is no question that a 'stoppage of harassment shows effectiveness . . . .'" (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998))); *Sutherland*, 632 F.3d at 995 ("To avoid liability, the employer must respond in a manner reasonably likely to end the harassment.").

gender. *See Yuknis v. First Student, Inc.*, 481 F.3d 552, 555 (7th Cir. 2007) ("Context may be critical to determining the object of hostility."). In fact, Mercer testified that she understood Officer Reed's comment to be a joke. Similarly, Mercer's testimony that Pitts' remark was made during a "silly conversation" undermines any inference that the remark, though certainly boorish and rude, was sufficiently severe to create a hostile work environment.

There is also nothing suggesting that the one occasion that Paleologos bumped into Mercer was sexual in nature or based on her gender. Mercer's testimony that she was standing near a door that Paleologos was passing through suggests that the incident was merely accidental—perhaps she was just in the way. But even if this incident were not accidental, it would not constitute the kind of severe or pervasive conduct necessary to create an objectively hostile work environment. *See, e.g.*, *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463–64 (7th Cir. 2002) (holding that the plaintiff's allegations that her supervisor twice rubbed her back and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even when taken together, did not create a sufficient inference of a hostile work environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998) (holding that the plaintiff's complaints of teasing; comments about bananas, rubber bands, and low-neck tops; staring and attempts to make eye contact; and four isolated incidents where a co-worker briefly touched her arm, fingers, or buttocks did not constitute sexual harassment).

The remaining incidents identified by Mercer cannot establish a gender-based hostile work environment because they either lack any connection to Mercer's gender or are insufficiently severe or pervasive. Nothing about Faezell's comment, Rodriguez's and Fords' aggressiveness, or Ford's physical contact while removing his hoodie indicates that any of this conduct was sexual in nature or based on Mercer's gender. Indeed, Mercer's testimony about these incidents strongly suggests that the officers were angry with Mercer because of her orders and disciplinary actions, and not because of her gender.

Therefore, the district court properly entered summary judgment on Mercer's gender-based hostile work environment claim.

**B.      Gender Discrimination**

Mercer also contends that she was subjected to discrimination based on her gender. Mercer proceeds under the indirect method derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case on this claim, Mercer must offer evidence

"demonstrating that (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). If Mercer establishes a *prima facie* case of discrimination, then her employer must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If her employer produces such a reason, Mercer must then "submit evidence demonstrating that the employer's explanation is a pretext." *Id.*

The district court held that Mercer failed to establish her *prima facie* case because she offered no evidence that she suffered an adverse employment action or that comparable male employees received more favorable treatment. The district court also concluded that Mercer could not show that the defendants' explanation for moving her was a pretext for discrimination.

Mercer argues that being reassigned constituted an adverse employment action. In some circumstances, a transfer *can* be an adverse employment action. *See Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) ("[A]n adverse employment action is a significant change in the claimant's employment status such as . . . reassignment to a position with significantly different job responsibilities . . . ."). However, a mere transfer—without more, such as a reduction in pay or significantly diminished responsibilities or working conditions—falls below the level of an adverse employment action necessary to support a claim of discrimination or retaliation. *See Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005). Mercer concedes that her reassignment to her prior division was not attended by any loss of salary or benefits. And she cites no evidence that her reassignment was accompanied by substantially changed working conditions. Thus, she cannot establish the third prong of her *prima facie* case.

Even if Mercer's reassignment were an adverse employment action, the district court correctly concluded that Mercer failed to identify similarly situated male employees who received more favorable treatment, and failed to show that the defendants' explanation for reassigning her was a pretext for discrimination. On appeal, Mercer relies upon the fact that none of the officers against whom she had leveled allegations had been reassigned. But "[e]mployees typically are similarly situated if they had the same supervisor, were subject to the same employment standards, *and engaged in similar conduct*." *Majors v. Gen. Elec. Co.*, 12-2893, 2013 WL 1592072, at *8 (7th Cir. Apr. 16, 2013) (emphasis added). Here, Mercer failed to identify a specific male officer who filed a complaint with the Internal Affairs

Division (and at the same time had a pending complaint against him), and yet who was not temporarily reassigned during the ensuing investigations.

Furthermore, Kaufmann, the Chief Investigator, explained to Mercer that she was moved because she had complained that her work environment was hostile and the Sheriff's Office did not wish to keep her in a potentially hostile work environment. This is certainly a legitimate justification for moving her. *Cf. Rizzo v. Sheahan*, 266 F.3d 705, 716–17 (7th Cir. 2001) (indicating that a temporary transfer of an employee during an investigation is acceptable). Mercer offers no evidence that this explanation was a pretext for discrimination. Moreover, even if the officers about whom Mercer had complained were similarly situated, her complaint named ten officers as well as "various other parties named or not named in the attached documentation." Kaufmann informed Mercer that it would not be practicable to reassign so many officers—nearly half of the entire shift. Mercer offers no evidence contradicting this reasonable explanation.

Therefore, the district court properly entered summary judgment on Mercer's gender-discrimination claim premised on Title VII. *A fortiori*, Mercer's discrimination claim premised on the Equal Protection clause also fails. *See Forrester v. White*, 846 F.2d 29, 32 (7th Cir. 1988) ("Since [the plaintiff] did not satisfy the lower burden of proof required under Title VII, the trial judge axiomatically concluded that she failed to satisfy the tougher burden of proof required under the Equal Protection clause.").[12]

### III. Conclusion

Mercer failed to come forward with evidence that she was subjected to severe or pervasive harassment based on her sex, or that the defendants turned a blind eye to such harassment. Consequently, she cannot state a Title VII gender-based hostile work environment claim against the defendants. Mercer also failed to present sufficient evidence that her reassignment was an adverse employment action, that comparable male employees were not similarly reassigned, or that the defendants' explanation for reassigning Mercer was a pretext for sex discrimination. Thus, she cannot establish a gender-discrimination claim under either Title VII or the Equal Protection clause. Therefore, we AFFIRM the district court's entry of summary judgment in favor of the defendants.

---

[12] Because Mercer's substantive claims fail, her indemnification claim also must fail.