NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2015
Decided December 14, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-3610

| | |
|---|---|
| SIRGERALD AKBAR, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> CALUMET CITY, *et al.*, <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 10 C 7993 <br><br> James B. Zagel, <br> *Judge*. |

**O R D E R**

After her son, Prince Akbar, was killed by a Calumet City police officer, Lajuana Lampkins sued the City and two of its police officers for civil-rights and state-law violations. She purported to bring this suit on behalf of her son's estate, despite the fact that she was not then, and never became, the administratrix of the estate. After the suit was filed, but before the district court disposed of the case, Prince's brother SirGerald Akbar was appointed as the Independent Administrator by order of the Circuit Court of Cook County, Probate Division. Without delving into the problems posed by Lampkins's earlier effort to represent the estate, the district court granted the defendants' motion for summary judgment and dismissed the action. We affirm.

**I**

In January 2010, Akbar (then 32 years old) wandered into the Thornton Fractional Center for Academics and Technology, a high school in Calumet City. School staff called the police to report a "strange man" in the building who was yelling, persistently asking to enroll in the school and use the telephone, and telling them that his God had told him to come there. The staff asked him to leave, but he did not do so. Ultimately the staff escorted him out of the building, though with difficulty.

Responding to the call, Officer Donielle Redwanc found Akbar on the street outside the school. Akbar approached her squad car and announced: "Redemption is yours. You are here to help me." Suspecting that Akbar might be mentally ill, Redwanc called a paramedic to perform a psychiatric evaluation. Akbar started walking away, prompting Redwanc to get out of her police car. At that point, Akbar turned around and told her that he was bipolar. Officer George Jones soon arrived, and both officers assured Akbar that they would not hurt him. Akbar then walked to the squad cars to wait for the paramedics.

The officers' accounts of what happened next vary slightly, though not materially. According to Redwanc, Jones attempted to pat down Akbar to ensure that he had no concealed weapons, but Akbar tensed his fists and started yelling "Fuck the police." According to Jones, Akbar became agitated and started yelling even before being touched, and so he and Redwanc grabbed Akbar's arms and tried to handcuff him to prevent the situation from "go[ing] south." Both officers testified that Akbar strenuously resisted their attempts to pat him down or handcuff him.

As Akbar continued yelling and screaming, the officers unsuccessfully tried to uncross his arms. Jones suspected that the encounter was about to "turn into a fight" and fired his taser gun at Akbar. Akbar, undeterred, knocked Redwanc to the ground and slugged Jones in the face. As Akbar and Jones were struggling on the ground, Redwanc approached and drew her gun. Akbar extricated himself from Jones, reached out, and knocked the gun from Redwanc's hand. She dove on top of it. Akbar then jumped on her, punched her repeatedly in the face, and slammed her head against the concrete. After a few moments, Akbar returned to Jones and resumed punching him, knocked him to the ground, and tried to wrest away his gun. Akbar then turned back to Redwanc. Jones, who was injured by the pummeling he had been taking, tried to subdue Akbar by firing a round into the back of Akbar's leg. Akbar spun around and started to return to Jones, who responded by firing a second and fatal round into Akbar's stomach.

Nearly a year later, Lampkins brought this suit under 42 U.S.C. § 1983 on behalf of her deceased son's estate, alleging that Officers Jones and Redwanc used excessive force and conspired to violate Akbar's Fourth Amendment rights and that the City of Calumet City failed to train its officers. She also included state-law claims against the two officers under the Illinois wrongful-death and survival statutes as well as a claim for respondeat-superior liability against the City.

Two years later, counsel for the estate notified the district court that he was seeking to have Akbar's brother, SirGerald Akbar, appointed as the estate's administrator. Counsel informed the court that Lampkins was not the estate's administrator, and indeed that she is barred under Illinois law from serving in that capacity because of a prior felony conviction. See 755 ILCS 5/9-1. The Circuit Court of Cook County's Probate Division issued an order appointing SirGerald as administrator on February 28, 2013. Although no documentation of SirGerald's appointment then appeared in the record, the district court acknowledged the substitution in a footnote. Because counsel for the appellants represents that he acts for the "administratrix" of the estate, we have substituted SirGerald Akbar as the appellant. See FED. R. CIV. P. 17(a)(1)(B), (a)(3).

The district court granted summary judgment for the defendants on all counts. It found no genuine issue of material fact to support the estate's excessive-force claim, concluding that Officer Jones's use of deadly force was objectively reasonable as a matter of law, given Akbar's "relentless attack." The court further found no evidence in the record to reflect that the officers or anyone else conspired to deprive Akbar of his constitutional rights. As for the failure-to-train claim, the court found no evidence that Akbar's constitutional rights had been violated, and no evidence from which it could be inferred that the City was deficient in training its officers. Finally, the court determined that the estate's state-law claims could not be maintained in light of the undisputed evidence showing that the officers' use of deadly force was reasonable.

## II

The first question we must address is whether Lampkins's lack of authority to represent the estate has any effect on this litigation. The only party entitled to raise the claims here is Akbar's estate, through a proper representative. See *Ray v. Maher*, 662 F.3d 770, 773–74 (7th Cir. 2011) ("§ 1983 claims are personal to the inured party" and thus may only be prosecuted by the estate's representative). Illinois law governs who may

bring a claim on behalf of an estate, 42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S. 584, 588–90 (1978), and only the administrator of the decedent's estate may bring a wrongful-death or survival action. See 740 ILCS 180/1; 755 ILCS 5/27-6; *Will v. Northwestern Univ.*, 881 N.E.2d 481, 492–93 (Ill. App. Ct. 2007).

As we noted, Lampkins was not at the time of filing, and never became, the legally appointed administratrix of Akbar's estate. She is thus not entitled to litigate on behalf of the estate under Federal Rule of Civil Procedure 17. See *Estate of Johnson v. Village of Libertyville*, 819 F.2d 174, 177 (7th Cir. 1987) (parents may not recover under § 1983 for injuries to their deceased daughter because they were not appointed administrators of her estate). Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest," and notes under (a)(1)(B) that an administrator may sue in his or her own name. The consequences for violating this rule are spelled out in Rule 17(a)(3):

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

In other words, the original flaw does not doom the litigation: it is subject to cure, and that is basically what happened here. Although Lampkins had no right to pursue this case as the real party in interest, that problem was solved when SirGerald was substituted as administrator. Dismissal, as the Rule notes, is not required in this situation, and so we are free to proceed to the merits.

### III

Before this court, the estate apparently has abandoned its excessive-force argument and shifted its focus to a new issue. For the first time, the estate asserts that the officers carried out an unreasonable search and seizure when Officer Jones tried to handcuff Akbar. By raising this argument for the first time on appeal, however, the estate has waived the argument. See *Hess v. Bresney*, 784 F.3d 1154, 1161 (7th Cir. 2015) ("It is well settled that arguments not developed before the district court are deemed waived on appeal.").

Even if we read the record generously enough to glean a Fourth Amendment argument from Akbar's district court filings, he cannot prevail. The only evidence in the record about the handcuffing is the testimony of the two officers. (One piece of evidence *not* in the record was the audio portion of an in-car video from Officer Jones's squad car that—according to the estate—captured Akbar being handcuffed and shouting "No, no, move, move! Get off me, motherfucker!" The parties disagree about the admissibility of the video, but the dispute is immaterial, because this court may not consider new evidence on appeal. See *Brown v. Watters*, 599 F.3d 602, 604 n.1 (7th Cir. 2010); *Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005).) Though the officers' stories vary slightly, either version depicts conduct that was justified under *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, police officers may "during an investigatory stop founded on reasonable suspicion that a crime is being, has been, or is about to be committed … frisk a detained person for weapons if the officers have an articulable suspicion that the person is both armed and a danger to the safety of officers or others." *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015); see *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004) ("The permissible scope of a *Terry* stop has expanded in recent years to include the use of handcuffs … ."). The estate does not dispute that the officers had reasonable suspicion to stop Akbar in the first place; it focuses only on whether the officers had an articulable suspicion to frisk or handcuff him. Given the surrounding circumstances—the officers responding to a call about a trespasser in a high school who was harassing the staff and refusing to leave the building, and Akbar's subsequent statements to Officer Redwanc that "Redemption is yours" and that he was bipolar—it was objectively reasonable for Officer Jones either to pat down Akbar to check for weapons (as Officer Redwanc testified) or to try to handcuff Akbar after he started yelling to prevent him from attacking the officers while they waited for the paramedics (as Officer Jones testified).

As for the conspiracy claim, the estate disputes the district court's conclusion that "there is virtually nothing in the record" to suggest that the officers conspired to violate Akbar's constitutional rights. The estate relies on evidence that the officers shared "a glance of mutual understanding" before attempting to handcuff Akbar. But proving the existence of a conspiracy requires the estate to show an agreement between the officers to inflict injury or harm on Akbar. See *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304–05 (7th Cir. 2011). Although an "agreement may be inferred from circumstantial evidence," any such inference must be based on more than speculation or conjecture. *Id.* at 305 (citation omitted). The evidence here does not clear that hurdle. Officer Jones testified only that he made eye contact with Officer Redwanc before attempting to handcuff Akbar: "And I kind of looked at Officer Redwanc, and she kind of looked at me, and kind of figure [*sic*] this might go south, so we both took one of Prince's arms and

attempted to handcuff him." This falls far short of supporting an inference of a conspiracy to violate Akbar's rights. In addition, the court correctly concluded that the absence of an underlying constitutional violation dooms the conspiracy claim as well. See *Sow*, 636 F.3d at 305.

Lastly, the estate argues that the district court erred in finding no evidence demonstrating that the City was deficient in training its police officers. The estate asserts, for instance, that Officer Jones was not trained to treat mentally ill suspects, and Officer Jones was one of Officer Redwanc's field training officers. But the estate does not say exactly how the officers' training was constitutionally deficient. Moreover, as with the conspiracy claim, the district court correctly concluded that the estate's failure-to-train claim must fail without an underlying constitutional violation. See *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).

## IV

The caption of the case and the judgment of the district court are modified to reflect that SirGerald Akbar is the plaintiff-appellant. As modified, we **AFFIRM** the judgment of the district court.