In the
# United States Court of Appeals
### For the Seventh Circuit

No. 08-2436

JOE BAIRD, *et al.*,

*Plaintiffs-Appellees*,

*v.*

JOHN RENBARGER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:06-cv-1150-DFH-WTL—**David F. Hamilton**, *Chief Judge.*

ARGUED JANUARY 16, 2009—DECIDED AUGUST 3, 2009

Before BAUER, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Law enforcement is a difficult
job, as "police officers are often forced to make
split-second judgments—in circumstances that are tense,
uncertain, and rapidly evolving." *Graham v. Connor*,
490 U.S. 386, 397 (1989). This reality is reflected in the
fact that courts give considerable leeway to law enforce-
ment officers' assessments about the appropriate use
of force in dangerous situations. See, *e.g.*, *Scott v. Harris*,

550 U.S. 372, 385-86 (2007). This latitude ends, however, when police officers employ force that is clearly excessive or unreasonable under the circumstances. That is the case here.

Officer John Renbarger participated in the execution of a search warrant that was based on the crime of altering a vehicle identification number ("VIN"). The crime itself does not involve violence; there was no sugges-tion that anyone at the search location was armed or dangerous; and no one at the site presented any resistance. Despite this, Renbarger decided to wield a 9-millimeter submachine gun, which he used to detain various people at the search site. The search ended when the officers concluded that the VIN had not actually been altered.

The people who had been held temporarily filed suit under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment and state law. Our appeal, however, deals only with the claims of excessive force against Renbarger, who filed a motion for summary judgment on the basis of qualified immunity. The district court denied his motion, and Renbarger has taken an inter-locutory appeal from that order. We affirm.

## I

Because Renbarger argues that the district court com-mitted legal error in its qualified immunity analysis, "the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary

judgment for that (purely legal) reason." *Johnson v. Jones*, 515 U.S. 304, 319 (1995). We summarize the facts set forth in the district court opinion. See *Shelby Indus. Park v. City of Shelbyville*, 2008 U.S. Dist. LEXIS 38272, 5-18 (S.D. Ind. May 9, 2008).

Joe Baird and Randy Robinson jointly owned Shelby Industrial Park in Shelbyville, Indiana. Robinson owned Randy's Auto Sales, a private automobile body shop and resale business, and Baird had his own body shop for antique cars and motorcycles. Both of these businesses were housed in the park. Several years before the incidents in this case, Baird bought a 1937 Lincoln Zephyr in order "to make a hot rod out of it." Because the car had an out-of-state title, Baird had his office manager call the Shelbyville Police Department to come and check the vehicle's motor number, the antique equivalent of a VIN.

Officer McCracken responded to the call, examined the VIN, and signed an affidavit verifying it. When he returned to the police department, however, he called a prosecutor to express his belief that the VIN had been altered. McCracken then obtained a search warrant for the Zephyr, and the next morning he went to the industrial park to execute it. Two other Shelbyville police officers (one of whom is the appellant, John Renbarger), two Indianapolis police officers, and James Beard, a member of the National Insurance Crime Bureau, accompanied him.

No officer involved had reported having any suspicion that anyone at the industrial park was armed or dangerous. Nevertheless, Renbarger slung a 9-millimeter

submachine gun around his neck. McCracken and Renbarger then entered Baird's shop, and McCracken told the people there to get in the center of the building and to sit down on the concrete. Everyone complied. Pointing his submachine gun, Renbarger rounded up anyone in the surrounding shops and warehouse, including a group of Amish men who were working nearby. He collected identification from everyone, except for the Amish, and held them for around two hours while the search was completed. Meanwhile, the other officers detained everyone in Robinson's shop and searched for the Zephyr. The Robinson group, too, were entirely compliant. When the officers found the car, Beard examined the VIN and concluded that it had not been altered. The officers then left.

Plaintiffs filed suit against the officers involved in the search and their employers under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment and claims under state law for trespass, negligence, and false imprisonment. The district court disposed of many of these claims by granting summary judgment to the defendants, but it denied Renbarger's motion for summary judgment on the basis of qualified immunity. Employing the test from *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the district court first concluded that "a reasonable jury could find that it was objectively unreasonable for Officer Renbarger to round up and detain the individuals in Joe Baird's shop by aiming a submachine gun at them." See *Shelby Indus. Park*, 2008 U.S. Dist. LEXIS 38272, at 41-42. Then, the district court held that "a jury could find that his actions were so unreasonable that they would violate clearly

established law under the Fourth Amendment," completing step two of the *Saucier* test and vitiating Renbarger's qualified immunity defense. *Id.* at 47.

## II

A denial of a claim of qualified immunity is "an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). This court reviews the district court's denial of summary judgment on qualified immunity grounds *de novo*. *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008).

Public officials are shielded from liability if their conduct does not violate the clearly established rights of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For some time now, courts have approached the qualified immunity question using a two-step inquiry. *Saucier*, 533 U.S. at 201. First, the court determines whether a constitutional right has been violated. If it finds a violation, it then asks whether the right was clearly established at the time the official acted. The Supreme Court recently held that the *Saucier* test is not mandatory and that lower courts may decide, in their discretion, in which order to answer these two questions. *Pearson v. Callahan*, 129 S. Ct. 808, 818-22 (2009). Because we believe that it is useful in resolving this case, we elect to follow the *Saucier* approach here.

The plaintiffs allege that Renbarger violated their Fourth Amendment rights through an unreasonable seizure

done with the use of excessive force—in particular, by using a submachine gun to round them up and detain them during the search. The question whether the seizure was unreasonable under the Fourth Amendment depends on whether it was objectively reasonable, judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396. The proper application of this test requires an analysis of the facts and circumstances of the case, "including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Plaintiffs need not show physical injury in order to sustain an excessive force claim. Such a rule would be inconsistent with the Supreme Court's ruling in *California v. Hodari D.*, 499 U.S. 621 (1991), recognizing that an arrest can be effectuated by the slightest application of physical force, or by some other show of authority. *Id.* at 625. The issue is simply whether, once it is clear (as it is here) that a seizure has occurred, that seizure meets Fourth Amendment standards.

The factors identified in *Graham* all tend to show that the use of the submachine gun was objectively unreasonable in the setting that Renbarger faced. First, the search and seizure concerned the crime of altering a special identification number. See IND. CODE § 9-18-8-12 (2008). This is a far cry from crimes that contain the use of force as an element, crimes involving possession of illegal weapons, or drug crimes, all of which are associated with violence. Second, there was never a reason to suspect that there was any threat to the safety of the

officers involved. McCracken had been to the site the day before, and the officers made no mention of danger or violence during the search. Third, none of the plaintiffs resisted detention or attempted to flee. Renbarger attempts to defend the reasonableness of his actions by pointing out that he did not know the identities of those who might be on the scene and that he was outnumbered. But taking the facts in the light most favorable to the plaintiffs, as we must, we see a scene of peaceable folks (including the famously pacifist Amish) going about their business, while the police inspect various vehicles for identifying information. Renbarger's subjective concerns do not transform this setting into one calling for such a heavy-handed use of force. Moreover, the facts show that the police were familiar with the site and had no reason to believe that there would be resistance.

We have found similar uses of force unreasonable in other cases. For example, we held that gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment. See *Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000) (pointing a gun at an elderly man's head for ten minutes even after realizing that he is not the desired suspect and when he presents no resistance is "out of proportion to any danger that Jacobs could possibly have posed to the officers or any other member of the community"); *McDonald v. Haskins*, 966 F.2d 292, 294-95 (7th Cir. 1992) (pointing a gun at a nine-year-old child during a search and threatening to pull the trigger was "objectively unreasonable"). In a slightly different context, we observed that "police officers do not have the right to shove, push,

or otherwise assault innocent citizens without any provo-
cation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048
(7th Cir. 1996).

Renbarger cites *L.A. County v. Rettele*, 550 U.S. 609 (2007),
and *Muehler v. Mena*, 544 U.S. 93 (2005), as examples of
cases in which comparable conduct was found to be
reasonable, as the police in those cases also pointed their
guns at people during the execution of search warrants.
The facts in those cases, however, revealed a serious
potential danger to the police. In *Rettele*, police knew
that one of the suspects for whom they were searching
owned a registered handgun. *Rettele*, 550 U.S. at 611. In
*Mena*, police were executing a search warrant for
deadly weapons, and they believed that a gang member
who was recently involved in a drive-by shooting lived
at the residence to be searched. *Mena*, 544 U.S. at 95-96.
Nothing of the sort existed in this case. We conclude
that, taking the facts in the light most favorable to the
plaintiffs, a reasonable jury could find that Renbarger
violated the plaintiffs' rights under the Fourth Amend-
ment.

We therefore proceed to the second step of the qualified-
immunity inquiry and ask whether the right at issue
was clearly established:

> [T]he right the official is alleged to have violated must
> have been "clearly established" in a more particular-
> ized, and hence more relevant, sense: The contours
> of the right must be sufficiently clear that a rea-
> sonable official would understand that what he is
> doing violates that right. This is not to say that an

> official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). In ascertaining whether a right is clearly established, this court looks to controlling Supreme Court and 7th Circuit precedent. A plaintiff need not point to identical cases. Indeed, in some rare instances where the constitutional violation is obvious, a plaintiff need not show any analogous cases, "as widespread compliance with a clearly apparent law may have prevented the issue from previously being litigated." *Denius v. Dunlap*, 209 F.3d 944, 951 (7th Cir. 2000).

Renbarger urges this court to view his behavior at a high level of generality; he sees it as the mere pointing of a gun. We decline to take this perspective. "Pointing a gun" encompasses far too great a variety of behaviors and situations. Renbarger pointed a submachine gun at various people when there was no suggestion of danger, either from the alleged crime that was being investigated or the people he was targeting. The Fourth Amendment protects against this type of behavior by the police. See *Jacobs*, 215 F.3d at 773-74; *McDonald*, 966 F.2d at 294-95.

The cases Renbarger cites are not to the contrary. They actually reinforce the critical point: while police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger. In *Williams v. City of Champaign*, 524 F.3d 826 (7th Cir. 2008), police pointed

their guns at someone who they reasonably believed might have committed a double robbery moments before. *Id.* at 827.[1] *McNair* involved "a suspect in a rough neighborhood [who] refuse[d] to stop when directed," which is a genuine source of police concern. *McNair*, 279 F.3d at 467 (7th Cir. 2002). Renbarger also points to language in *Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989), to support his position. In dicta, *Wilkins* cited with approval the physical injury requirement for Fourth Amendment claims from the Fifth Circuit case *Hinojosa v. Terrell*, 834 F.2d 1223 (5th Cir. 1988). *Wilkins*, 872 F.2d at 194. As noted earlier, however, the physical injury requirement has not been adopted by this circuit, and for good reason. Rigid insistence on physical injury would be tantamount to a rule under which pointing a gun is always *per se* reasonable. This would not be consistent with *Graham* or *Hodari D.*, which require us to delve further into the facts to determine the context in which the gun pointing occurs.

---

[1] The opinion in *Williams* at one point observes that it is important to "distinguish between a detention, which if unreasonable violates the Fourth Amendment, and an accompanying display (as distinct from use) of force which may not—an unresolved question . . . ." 524 F.3d at 829. Just as in *Williams*, however, there is no need to consider that broad issue in our case. We have both an unreasonable detention and enforcement by a specific display of force where there was no hint of danger to the police officers or others. As the cases we cite from this circuit and others indicate, the unreasonableness of this action, for Fourth Amendment purposes, is thoroughly resolved.

Other circuits have also held that pointing guns at persons who are compliant and present no danger is a constitutional violation. See, *e.g.*, *Motley v. Parks*, 432 F.3d 1072, 1089 (9th Cir. 2005) (*en banc*) (holding an infant at gunpoint constitutes excessive force); *Robinson v. Solano County*, 278 F.3d 1007, 1015-16 (9th Cir. 2002) (*en banc*) (pointing a gun at an unarmed suspect who poses no danger constitutes excessive force); *Holland v. Harrington*, 268 F.3d 1179, 1192-93 (10th Cir. 2001) (holding children at gunpoint after the officers had gained complete control of the situation "was not justified under the circumstances"); *Baker v. Monroe Township*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (detention at gunpoint violated the Fourth Amendment as there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used"). We note that these cases so often involve children because they are much less likely to present the police with a credible threat. In other words, the unreasonableness of the gun-pointing is more apparent in these cases, though pointing a gun at a compliant adult in a non-threatening situation, as in this case, can also constitute excessive force.

Conversely, courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police. See, *e.g.*, *Aponte Matos v. Toledo Davilo*, 135 F.3d 182, 191-92 (1st Cir. 1998) (individual attempted to enter house that was being searched for weapons); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (suspect was believed to have a handgun); *Edwards v. Giles*, 51 F.3d 155, 156-57 (8th Cir. 1995) (suspect fled police); *Courson v. McMillian*, 939 F.2d 1479, 1496 (11th Cir.

1991) (drug crime suspects outnumbered police officer, were intoxicated, and one was verbally aggressive); *Collins v. Nagle*, 892 F.2d 489, 495-97 (6th Cir. 1989) (individual approached scene in which officers were dealing with uncooperative suspects).

We conclude that a reasonable jury could find that Renbarger violated the plaintiffs' clearly established right to be free from excessive force when he seized and held them by pointing his firearm at them when there was no hint of danger. As a result, Renbarger is not entitled to qualified immunity.

*  *  *

For these reasons, we AFFIRM the district court's opinion.